UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

ROGERS A. NWABUE,

        Plaintiff,

v.                                                        **DECISION AND ORDER**
                                                                09-CV-1092S

BARAA ALLAF, *et al.*,

        Defendants.

---

    1.    *Pro se* Plaintiff, Rogers Nwabue, brings this action alleging that several defendants, all of whom were apparently administrators, professors, and/or physicians affiliated with the State University at Buffalo Medical School ("UB"), made defamatory statements that were "intended to impeach [his] 27 years professional reputation [sic], integrity and virtue as a physician."[1] (Complaint; Docket No. 1.)

    2.    Initially, Nwabue filed six separate actions in this Court, each asserting defamation claims against various UB defendants. By Order dated September 9, 2010, this Court consolidated those actions and, under the liberal *pro se* standard, interpreted his claim as one alleging that said defamation produced a "stigma plus," which is actionable under the Fourteenth Amendment's Due Process Clause. (Docket No. 3.) Presently before this Court are Defendants Baraa Allaf and Sara Poynter-Gerhards' motion for summary judgment and Nwabue's cross-motions for "default and/or summary judgment plus

---

[1] This Court acknowledges that it must liberally construe Plaintiff's pleadings and interpret his submissions to raise the strongest arguments that they suggest. See Triestman v. Fed. Bureau of Prisons, 470 F.3d 471, 475 (2d Cir. 2006).

injunctive relief" against both Allaf and Pointer-Gerhards.[2,3] (Docket Nos. 97, 103, 105.) For the following reasons, Allaf and Poynter-Gerhards' motion is granted and Nwabue's motions are denied.

3.      This case appears to arise out of alleged mistreatment associated with Nwabue's termination from UB's Obstetrics-Gynecology Residency Training Program ("program").[4] Nwabue was accepted into the program on August 13, 2008, and, because he transferred from another school, began the program as a third-year student on September 11, 2008. (Def.'s Stmnt., ¶¶ 4, 9, 10; Docket No. 97-1.) Negative reports and evaluations, however, began to surface as early as the first day that he began the program (Id., ¶ 10). Spanning the next several months, the complaints ranged from demeaning and dismissive behavior (id., ¶ 12), to an inability to control his emotions (id., ¶ 15), to deficiencies in performing and explaining medical procedures (id., ¶ 19).

---

[2] Two other motions (Docket Nos. 82, 86), related to discovery, are also pending before this Court. This Court, however, finds it unnecessary to pass on those motions in light of the resolution of the motions for summary judgment.

[3] Defendants Armand Arroyo, Amy Bumbaco, Alice Caster, Lata Santhakumar, and Dennis Weppner have not moved for summary judgment, but their attorney has submitted an affidavit indicating simply that Defendants Allaf and Poynter-Gerhards' motion "applies with equal force" to them. (Murphy Decl., ¶ 3; Docket No. 102.) This Court, however, declines to enter *sua sponte* summary judgment in favor of these defendants because Nwabue asserts slightly different claims against some of the non-moving defendants. Although those claims are likely subsumed within his due process claim, are state-law claims, or are otherwise not actionable, without notice of a potential *sua sponte* action and the opportunity for briefing on these claims, it would be improvident to enter summary judgment at this time. See NetJets Aviation, Inc. v. LHC Commc'ns, LLC, 537 F.3d 168, 178 (2d Cir. 2008).

[4] This Court has accepted facts in Defendants' statement of facts to the extent that they have not been controverted by Nwabue. See Local Rule 56(a)(2) (statements not specifically controverted are deemed admitted). Nwabue has also submitted two statements of facts. (Docket Nos. 104, 107.) They prove, however, to be of little value. Nwabue does not contest Defendants' version of the facts but instead spends several pages detailing seemingly irrelevant facts and generally expressing his frustration with Allaf and Pointer-Gerhards. He also explains what appears to be some sort of confusion resulting from discharge summaries and patient "hand-overs," which do appear to be the basis of his complaint, but he points to no specific statements made by Defendants. Instead, he generally and incorrectly states that Defendants "admitted making defamatory statements that damaged the Plaintiff's reputation. . . ." (Pl.'s Stmnt., ¶ 13; Docket No. 107.)

4.      As these complaints relate to these motions, Defendant Allaf and Poynter-Gerhards each wrote letters to program administrators detailing troubling interactions they had with Nwabue. Allaf's letter recounts a phone call during which he claims that Nwabue screamed at him and was generally rude to him. (Allaf Letter, appended to Complaint as "Attach. 12.") Poynter-Gerhards also recounted an unpleasant phone conversation with Nwabue. According to her, Nwabue screamed at her and ordered her to perform a task that Poynter-Gerhards believed was Nwabue's duty. (Poynter-Gerhards Letter, appended to Third Supplemental Complaint as "Attach. 7"; Docket No. 6.)   He screamed so loud, according to Poynter-Gerhards, that nearby nurses could hear him through the phone. (Id.) Those nurses attested to this fact in her letter. (Id.)

5.      Based on concerning behavior such as this, Dr. John Yeh, the Program Director, and two other program administrators conducted a "Level 1" meeting with Nwabue, the purpose of which was to review and discuss problem areas before any further action was taken. (Id., ¶ 21.) At the meeting, Dr. Yeh identified several concerns and laid out a detailed "Plan of Remediation" that Nwabue was to follow, hopefully curing these deficiencies. (Id., ¶¶ 21, 22, 23.) Due to his poor performance to date, he was also placed on probation, the terms of which indicated that any violation of Dr. Yeh's plan would result in immediate dismissal from the program. (Id., ¶¶ 22, 23.)

6.      Thereafter Nwabue requested a "Level II" Grievance Hearing to appeal his probation. (Id., ¶ 24.) Such a hearing is held by a committee selected from an established pool of 20 resident-physicians and 20 faculty members. (Id., ¶ 25.) At the hearing, conducted on February 19, 2009, Dr. William Dillon, Assistant Program Director, presented the reasons why Nwabue was placed on probation. (Id., ¶ 27.) Dr. McAloon, Defendant

Poynter-Gerhards, and Defendant Lata Santhakumar also presented evidence concerning Nwabue. (Id.) Nwabue was able to question each of the witnesses and present his own, which he did by calling Katrina Austin, a former patient, and Dr. Lani Burkman, a UB professor. (Id.) The hearing concluded with each side making closing remarks. (Id.)

Issuing their written decision on March 6, 2009, the committee unanimously decided that the decision to place Nwabue on probation was not in error. (Id.)

7. Thereafter, on the same day, Dr. Yeh informed Nwabue that he was terminated from the program due to his failure to comply with the terms of his probation. (Id., ¶ 28.) Indeed, it is undisputed that Nwabue failed to comply with many aspects of Dr. Yeh's plan. He missed required appointments, failed to return phone calls, submitted a late paper after receiving two extensions, continued to exhibit unprofessional behavior, and failed to make improvements in his substantive medical tasks. (Id., ¶ 29.) Although he was entitled to appeal this decision, he elected not to do so. (Id., ¶ 30.)

8. Nwabue and Defendants Allaf and Poynter-Gerhards now move for summary judgment.[5] Rule 56 of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A fact is "material" only if it "might affect the outcome of the suit under governing law." Anderson v. Liberty

---

[5] Nwabue also moves for default judgment arguing that Defendants have failed to properly appear. That issue has already been addressed and dismissed by this Court. (Docket No. 67.) This Court also notes at this time that there is no proof of service on record for Defendants Slawek, Devine, and Massue.
    Nwabue also moves for injunctive relief. Nwabue asserts no facts, nor makes any argument that would compel such relief. His motion is therefore denied.
    Lastly, Nwabue argues that Defendants' motion should be denied because they initially failed to provide the requisite "Pro Se Litigant Rule 56 Notice." (See Local Rule 56 – "Notice to Pro Se Litigants.") Defendants, however, later filed this notice (Docket No. 112) and this Court finds it can therefore hear the merits of Defendants' motion.

Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).  A "genuine" dispute exists "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Id.  In determining whether a genuine dispute regarding a material fact exists, the evidence and the inferences drawn from the evidence "must be viewed in the light most favorable to the party opposing the motion." Adickes v. S. H. Kress & Co., 398 U.S. 144, 158–59, 90 S. Ct. 1598, 1609, 26 L. Ed. 2d 142 (1970) (internal quotations and citation omitted).

"Only when reasonable minds could not differ as to the import of evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir. 1991) (citation omitted).  Indeed, "[i]f, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc., 391 F.3d 77, 82-83 (2d Cir. 2004) (citations omitted). The function of the court is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.

9.   Nwabue's complaint and third supplemental complaint unequivocally and exclusively seek redress for the letters of Defendants Allaf and Poynter-Gerhards, which Nwabue contends were defamatory. But it is well established that "defamation, by itself, is a tort actionable under the laws of most States, but not a constitutional deprivation." Seigart v. Gilley, 500 U.S. 226, 233, 111 S. Ct. 1789, 114 L. Ed. 2d 277 (1991). To implicate the Constitution, the Second Circuit requires "some 'stigma plus' be established before a mere defamation will rise to the level of a constitutional deprivation." Martz v. Inc. Vill. of Valley Stream, 20 2F. 3d 26, 31 (2d Cir. 1994). Actions like this are referred to as

stigma-plus claims because they involve an "injury to one's reputation (the stigma) coupled with the deprivation of some 'tangible interest' or property right (the plus)." DiBlasio v. Novello, 344 F.3d 292, 302 (2d Cir. 2003). Construing Nwabue's complaint to raise the strongest argument it suggests, it is this type of claim that this Court has found Nwabue is asserting. (See Consolidation Order; Docket No. 3)

10.     To sustain a "stigma-plus" claim, a plaintiff must show that defendants made (1) a defamatory statement, resulting in (2) "some tangible and material state-imposed burden in addition to the stigmatizing statement," like the loss of employment, and (3) a lack of process adequate to justify the state's action. See Velez v. Levy, 401 F.3d 75, 87-88 (2d Cir. 2005) (internal quotation marks and ellipsis omitted). In ascertaining whether a complaint alleges the deprivation of a stigma-plus liberty interest, the "stigma" and "plus" must be "sufficiently proximate." Id. at 89. "This requirement will be satisfied where (1) the stigma and plus would, to a reasonable observer, appear connected – for example, due to their order of occurrence, or their origin – and (2) the actor imposing the plus adopted (explicitly or implicitly) those statements in doing so." Id. (internal citations omitted).

11.     As an initial matter, it is not even clear that Nwabue has suffered a stigmatization. Although the letters questioned his ability to perform his occupation, it is unclear whether they "impugn[ed] the employee's professional reputation in such a fashion as to effectively put a significant roadblock in that employee's continued ability to practice his or her profession." See Donato v. Plainview-Old Bethpage Cent. Sch. Dist., 96 F.3d 623, 630-31 (2d Cir. 1996); see also Fenje v. Feld, 398 F.3d 620, 627 (7th Cir. 2005) (statement must make it "virtually impossible" for the person to find new employment). Each letter merely questioned his professionalism in one instance, and concerned only his

temperament. See Schlesinger v. N.Y.C. Transit Auth., No. 00 Civ. 4759, 2001 WL 62868, at *7 (S.D.N.Y. Jan. 24, 2001) (statements charging that plaintiff acted in an unprofessional manner not sufficiently stigmatizing); LaForgia v. Davis, No. 01 Civ. 7599, 2004 WL 2884524, at *8 (S.D.N.Y. Dec. 14, 2004) (statement that employee poorly performed her duties or acted in an improper manner not sufficient). However, even assuming that the alleged defamatory statements rise to the necessary level, Nwabue's claim must fail because the evidence demonstrates that he was released because he failed to comply with the required terms of his probation. Nwabue does not even contest this. The link, therefore, between the letters and his dismissal was broken when Nwabue repeatedly failed to abide by the terms of his probation, which directly resulted in his dismissal. In this way, even if the statements were defamatory, the letters were not "sufficiently proximate" to his dismissal. See Velez, 401 F.3d at 89.

12. The Second Circuit has cited with approval Hawkins v. Rhode Island Lottery Commission, 238 F.3d 112, 116 (1st Cir. 2001), wherein the court found that the plaintiff could not sustain his claim in part because "the party responsible for the alleged defamation was not the party responsible for the termination." Although this fact alone is insufficient to defeat the claim, here, as in Hawkins, the moving defendants "neither spoke for the [decision maker] nor controlled its actions." Id. The moving defendants merely wrote separate letters reporting troublesome conversations they each had with Nwabue. There is no evidence that either of the two moving defendants had the authority to release Nwabue or that those who did have the authority simply adopted the viewpoints of the moving defendants. Instead, Dr. Yeh terminated Nwabue for his repeated failure to comply with his remediation plan.

13. Nwabue's claim is struck a second fatal blow because, even if the link between his termination and the alleged defamatory statements were not attenuated, and even if those with the authority to terminate him did adopt the viewpoints of the moving defendants, as co-residents in the program, the moving defendants did not have the power to provide process to Nwabue. This fact alone relieves them of any liability. Velez, 401 F.3d at 93 ("[Defendants] did not undertake or oversee the investigation, and they could order neither pre-removal review nor post-removal remedies. As a consequence they cannot be held legally accountable for the alleged process failure.").

14. What is more, Nwabue's claim fails even absent these considerations because sufficient process was made available to him. See id. at 88; see also Donato, 96 F.3d at 633 (remedy for a stigma-plus violation is a name-clearing hearing).

15. The touchstones of due process are notice and an opportunity to be heard. Mullane v. Cent. Hanover Bank & Trust Co., 339 U.S. 306, 314, 70 S. Ct. 652, 657, 94 L. Ed. 865 (1950). Nwabue had the protections of two hearings: the "Level II" hearing before he was terminated and a "Level III" hearing, which he could have invoked after his release. In the former he was permitted to cross-examine witnesses, call witnesses, and make opening and closing statements before an impartial panel. Similar procedures are followed in the latter proceeding. (See UB Grievance Procedures Policy, attached as "Ex. O" to Def.'s Stmnt.; Docket No. 97-19.) This quasi-judicial proceeding more than satisfies the Constitution's due process mandate. See, e.g., Mathews v. Eldridge, 424 U.S. 319, 334, 96 S. Ct. 893, 902, 47 L. Ed. 2d 18 (1976); Segal v. City of N.Y., 459 F.3d 207, 216 (2d Cir. 2006); see also Anemone v. Metro. Transp. Auth., 629 F.3d 97, 121 (2d Cir. 2011) (availability of adequate hearing defeats stigma-plus claim even if plaintiff failed to pursue

it).

16. For the foregoing reasons, (1) the moving defendants' motion for summary judgment is granted, (2) their motion to strike is denied, and (3) Nwabue's motions are denied.[6]

\* \* \*

IT HEREBY IS ORDERED, that Allaf and Poynter-Gerhards' Motion for Summary Judgment (Docket No. 97) is GRANTED.

FURTHER, that Nwabue's "Cross-Motion for Default and/or Summary Judgment, Plus Injunctive Relief against Baraa Allaf" (Docket No. 103) is DENIED.

FURTHER, that Nwabue's "Cross-Motion for Default and/or Summary Judgment, Plus Injunctive Relief as to Debra Devine, Ella Massue, Sara Poynter-Gerhards, and Donna Slawek" (Docket No. 105) is DENIED.

FURTHER, that Allaf and Poynter-Gerhards' Motion to Strike (Docket No. 82) is DENIED as moot.

FURTHER, that Nwabue's Cross-Motion to Compel (Docket No. 86) is DENIED.

SO ORDERED.

Dated: May 22, 2012
      Buffalo, New York

                                      /s/William M. Skretny
                                      WILLIAM M. SKRETNY
                                      Chief Judge
                                        United States District Court

---

[6] Throughout his motion papers, Nwabue also makes passing and disjointed references to 42 U.S.C. §§ 1981 and 1985, the Civil Rights Act of 1964, the substantive protections of the Fourteenth Amendment, the Bill of Rights, and the Age Discrimination in Employment Act, 29 U.S.C. §§ 621 *et seq*. To the extent that he seeks to assert claims under these protections, those claims are dismissed for lacking a factual foundation in both his complaints and the record evidence.